UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROSEMARIE VANSTEENKISTE,
Personal Representative of the
Estate of Rose Jannette,

       Plaintiff,

                                                         Civil Action No. 12-CV-15055
vs.                                                 HON. MARK A. GOLDSMITH

LAKESIDE MALL, LLC,

       Defendant.
_____/

**OPINION AND ORDER (1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. 27) and
(2) DENYING PLAINTIFF'S MOTION TO FILE AN AMENDED COMPLAINT AND TO REOPEN DISCOVERY (DKT. 35)**

### I.    INTRODUCTION

In this premises liability action, Plaintiff Rosemarie VanSteenkiste asserts that her mother, Rose Jannette, was injured on Defendant Lakeside Mall, LLC's property.[1] Am. Compl. (Dkt. 7). The matter is presently before the Court on Defendant's motion for summary judgment (Dkt. 27) and Plaintiff's motion to amend her complaint and to reopen discovery (Dkt. 35). Oral argument was conducted on November 14, 2013 and December 18, 2013. For the reasons that follow, the Court grants the motion for summary judgment and denies the motion to amend and to reopen discovery.

### II.    BACKGROUND

---

[1] When this case was filed, Rose Jannette was Plaintiff. Jannette died on August 25, 2013. Counsel for Plaintiff filed a statement noting death on September 12, 2013 (Dkt. 30). On November 13, 2013, the Court entered a stipulated order to amend the case caption to name Rosemarie VanSteenkist, personal representative of the estate of Rose Jannette, deceased, as Plaintiff (Dkt. 36).

1

On October 17, 2011, Rose Jannette and her daughter, Rosemarie VanSteenkiste, parked in Defendant's parking lot. Dep. of Rosemarie VanSteenkiste at 64 (Dkt. 34-3). Jannette, who is currently deceased, was 94 years old at the time. See Pl. Resp. at 1 (Dkt. 34). She had a handicap sticker on her car. VanSteenkiste Dep. at 67. Jannette and her daughter parked in the only vacant handicap spot in the parking lot, which was the farthest handicap spot from the store entrance. Id. at 68; see also Photos of Parking Lot (Dkt. 27-3).

VanSteenkiste exited the car and brought a walker to Jannette, who got out of the car and began walking with the walker. VanSteenkiste Dep. at 71. Jannette and her daughter, who was following behind Jannette, began walking on a blue-striped area of the pavement in between the handicap parking spaces. Id. at 72; see also Photos (Dkt. 34-2). The area in which they were walking connected to another blue-striped area that crossed in front of the line of handicap parking spaces. See Photos (Dkt. 34-2). Jannette and VanSteenkiste intended to walk on the blue-striped walkway crossing in front of the parking spaces. VanSteenkiste Dep. at 73. VanSteenkiste testified, "[W]e didn't have an option. If we walked behind the car, we would be walking into traffic that was pulling in. If we went beyond that, there was several lanes . . . of traffic . . . . So that appeared to be the best route to get to [the store entrance]." Id.

Jannette fell at the beginning of the blue-striped walkway that crossed in front of the handicap parking spaces. Id. at 76. Jannette's daughter saw her fall forward and to the right, and onto the ground. Id. at 87-92. At the time, VanSteenkiste did not know what caused the fall. Id. at 106.

Jannette later told her daughter that, as she was beginning to walk across the blue-striped walkway, "she felt the wheel of the walker got jammed or stuck into the ground which caused

2

the walker to become imbalanced causing her to fall." Id.[2] Pictures and video submitted by the parties show a crack running across the width of the beginning of the blue-striped walkway in between the parked cars and the curb. Photos (Dkts. 34-2, 27-3, 27-5, 27-6); Video (Pl. Ex. D, submitted in CD format). Based on the photos, the Court estimates that the crack is approximately half an inch to an inch wide and half an inch deep.

VanSteenkiste testified that, at the time of her mother's fall, she (VanSteenkiste) did not see the crack; she stated that "if there was a crack, we would have avoided it at all costs." VanSteenkiste Dep. at 83. She further testified that her mother's walker was new and functioning, and that neither Jannette nor VanSteenkiste had trouble pushing the walker. Id. at 119-120. After Jannette fell, VanSteenkiste put her on the walker seat and pushed her across the parking lot into the store. Id. at 120.

Inside the store, Jannette and VanSteenkiste spoke to a security officer, who filed an incident report (Dkt. 27-7). Jannette requested an ambulance, which arrived and took her to Henry Ford hospital. Id. VanSteenkiste testified that, after the fall, Jannette experienced migraines, vocal fold injury, an inability to stand or walk, and difficulty eating. VanSteenkist Dep. at 10, 14-15. Jannette died on August 25, 2013. See Statement Noting Death (Dkt. 30).

On October 9, 2012, Jannette filed a complaint in Macomb County Circuit Court; the matter was removed to this Court on November 15, 2012. Notice of Removal (Dkt. 1). On December 20, 2012, Jannette filed an amended complaint (Dkt. 7), asserting one count of

---

[2] Plaintiff asserts that this statement falls under the present sense impression and excited utterance hearsay exceptions. Pl. Statement of Additional Material Facts ¶ 4 (Dkt. 34). Under Federal Rule of Evidence 803(1), the present sense impression hearsay exception provides that a statement "is not excluded by the rule against hearsay" if the statement "describe[s] or explain[s] an event or condition, made while or immediately after the declarant perceived it." Under Federal Rule of Evidence 803(2), the excited utterance hearsay exception provides that a statement "is not excluded by the rule against hearsay" if the statement "relat[es] to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Defendant does not challenge the admissibility of this statement.

premises liability and one count of vicarious liability. Defendant filed the pending motion for summary judgment (Dkt. 27), arguing that the open-and-obvious doctrine bars Plaintiff's claims; subsequently, Plaintiff filed the pending motion to amend (Dkt. 35), which seeks to amend the complaint to add claims of statutory violations.

### III. LEGAL STANDARD

#### A. Motion for Summary Judgment

Summary judgment should be granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). As the Sixth Circuit has explained,

> Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." . . . The burden is generally on the moving party to show that no genuine issue of material fact exists, but that burden may be discharged by "showing-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." In reviewing a summary judgment motion, credibility judgments and weighing of the evidence are prohibited. Rather, the evidence should be viewed in the light most favorable to the non-moving party. Thus, the facts and any inferences that can be drawn from those facts[ ] must be viewed in the light most favorable to the non-moving party.

Biegas v. Quickway Carriers, 573 F.3d 365, 373-374 (6th Cir. 2009) (citations omitted).

#### B. Motion to Amend

A party may amend its pleading only with the opposing party's written consent or by leave of court, which should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2) (providing for amendment after the deadline for amending a pleading as a matter of course has expired).[3] "In the absence of any apparent or declared reason—such as undue delay, bad faith or

---

[3] Although a party may amend its pleading "once as a matter of course within . . . 21 days after serving it, or . . . 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f)," Fed. R. Civ. P. 15(a)(1), this provision is not applicable

dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" Foman v. Davis, 371 U.S. 178, 182 (1962).

### IV.     ANALYSIS

For the reasons that follow, the Court concludes that the open-and-obvious defense bars Plaintiff's claim of premises liability, and that Defendant is entitled to summary judgment on that claim. Plaintiff's motion to amend will be denied on the basis of futility because the proposed amendments do not set forth a legally viable claim.

**A. Motion for Summary Judgment**

For the reasons that follow, the Court concludes that the sidewalk crack would be apparent to a reasonably prudent observer upon a casual inspection, and that there were no special aspects of the crack that rendered it either effectively unavoidable or extremely dangerous. The Court, therefore, concludes that the open-and-obvious doctrine bars Plaintiff's premises liability claim. Further, the Court declines to apply an altered standard of care, based on claimed statutory violations, to the premises liability analysis.

**1. Applicability of open-and-obvious doctrine**

Defendant argues that the open-and-obvious doctrine bars Plaintiff from recovering on her claim, because, based on an objective test applying the characteristics of a reasonably prudent person, the crack in the handicap walkway was easily visible upon a casual inspection. Def. Br. in Support of Mot. for Summ. J. at 7 (Dkt. 27). The Court agrees.

"In general, a premises possessor owes a duty to an invitee to exercise reasonable care to

---

here. The window for Plaintiff to amend her pleading as a matter of course has closed, and thus Plaintiff must seek leave to amend under Rule 15(a)(2).

5

protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land. However, this duty does not generally encompass removal of open and obvious dangers." Lugo v. Ameritech Corp., Inc., 629 N.W.2d 384, 386 (Mich. 2001) (citations omitted). "The test to determine if a danger is open and obvious is whether an average user with ordinary intelligence would have been able to discover the danger and the risk presented upon casual inspection." Joyce v. Rubin, 642 N.W.2d 360, 364 (Mich. Ct. App. 2002) (citations and quotation marks omitted). "In making a determination about whether an alleged dangerous condition is 'open and obvious,' such a determination is not dependent on the characteristics of a particular plaintiff, but rather on the characteristics of a reasonably prudent person." Mann v. Shusteric Enterprises, Inc., 683 N.W.2d 573, 577 n.10 (Mich. 2004) (citations omitted).

The Court concludes that the sidewalk crack, which, based on the photos and video submitted, was a long crack in the sidewalk easily visible even from a distance, would have been apparent to an "average user" upon "casual inspection." Although VanSteenkiste stated that she did not see the crack before her mother fell, the test for whether a condition is open and obvious depends not on what a particular person saw or did not see, but rather on "the characteristics of a reasonably prudent person." See Mann, 683 N.W.2d at 577 n.10. The Court concludes that the evidence submitted shows an easily visible sidewalk crack.

Plaintiff argues, however, that the open-and-obvious defense does not bar her claim of premises liability, due to various "special aspects" of the sidewalk crack that (i) made it effectively unavoidable and (ii) created a risk of severe harm. Pl. Resp. at 9-11 (Dkt. 34) (citing Lugo, 629 N.W.2d at 387-388 (concluding that "special aspects" may exist, thereby making the open-and-obvious doctrine inapplicable, if the condition either was effectively unavoidable or unreasonably dangerous)). The Lugo court gave examples of special aspects that would render

the open-and-obvious doctrine inapplicable: (i) a puddle of standing water at a building's only exit (rendering the water effectively unavoidable) or (ii) a thirty-foot-deep pit in the middle of a parking lot (creating a risk of extremely severe harm). Id. Furthermore, less extreme examples may also present special aspects; for example, congested foot traffic on a set of stairs leads to a high risk of falling off the stairs, and therefore may create an effectively unavoidable danger. Bertrand v. Alan Ford, Inc., 537 N.W.2d 185, 193 (Mich. 1995) (declining to find, as a matter of law, that the risk of harm presented by the stairs was reasonable).

Plaintiff argues that the following special aspects of the sidewalk crack made it effectively unavoidable: the crack ran the entire width of the handicap sidewalk; the sidewalk was the only safe area in which to walk; and the only parking spot available when VanSteenkiste and Jannette parked was right next to the crack. Pl. Resp. at 13-14. Plaintiff also argues that special aspects of the crack made it unreasonably dangerous: the crack encompassed the entire width of the handicap sidewalk path; the pavement was separated into different "grades" or levels; to avoid the crack, a handicapped person would have had to leave the handicapped area and walk in a vehicle travel aisle; the only handicapped spot available when Plaintiff parked was by the crack; and the sidewalk posed a risk of congested foot traffic. Id. at 11-12. Defendant disputes these points, asserting that there was no special or increased risk of harm posed by the crack, because (i) there were alternate routes into the mall and (ii) the location near the handicapped parking does not affect the "open and obvious" test. Def. Br. in Support of Mot. for Summ. J. at 10.

The Court concludes, first, that the sidewalk crack was not effectively unavoidable for a reasonably prudent person. For example, the crack would be avoidable by parking in a different handicap spot or another non-handicap spot in the lot. Even if the only spot available was the

7

spot in which Jannette and her daughter parked, the photos make clear that the sidewalk crack could have been avoided by, for example, stepping over it and lifting the walker, or walking around two parked cars and then crossing into the blue-striped walkway. Indeed, VanSteenkiste testified that there were alternative routes available. VanSteenkiste Dep. at 120-121 (stating that proceeding through the blue-striped walkway at issue was not the only route available for her and her mother to take, though she thought it was "the best and safest route").[4] Although Plaintiff argues that Jannette, who was "an elderly handicapped woman using her walker," would not reasonably have been able to safely walk behind parked cars in the vehicle travel area, Pl. Resp. at 14, the Court cannot agree. Every parking lot has a travel area, and persons with disabilities, like persons without disabilities, must negotiate them. There is nothing inherently dangerous about such locations, and nothing in the record suggests that the subject location had some unique aspect. Indeed, Jannette had the advantage of being assisted by her daughter, who was in a position to help her safely navigate through the parking lot and walkway, and to identify and avoid potential hazards. For these reasons, the crack was not "effectively unavoidable."

Further, the Court concludes that the crack did not pose a risk of severe harm. Plaintiff relies on the <u>Bertrand</u> court's conclusion that congested foot traffic on a set of stairs may lead to a uniquely high risk of harm. In <u>Bertrand</u>, the plaintiff was on an elevated walkway outside of a car service area, holding a door open for people entering the service area. <u>Bertrand</u>, 537 N.W.2d at 191-192. The plaintiff testified that she tried to step back to allow the door to close, but that her path was blocked by a vending machine, forcing her to step sideways, off of the elevated walkway. <u>Id.</u> As she stepped aside, she stepped on the curb edge, lost her footing, and fell. <u>Id.</u> at 192. The court concluded that there was a genuine issue of fact regarding "whether the

---

[4] VanSteenkiste testified, "I think it was the best and safest route. Again, if we went behind us, there was traffic. If we went in front of us, there was traffic more than one lane. So I – to exit, that would be the closest and safest route." VanSteenkiste Dep. at 121.

construction of the step, when considered with the placement of the vending machines and the cashier's window, along with the hinging of the door, created an unreasonable risk of harm, despite the obviousness or the invitee's knowledge of the danger of falling off the step." Id.

The Court concludes that Bertrand is factually distinguishable from the instant case, for the following reasons: (i) the walkway in the instant case was not elevated, and therefore did not pose the same risk of falling as did the walkway in Bertrand; (ii) there was no evidence of unusually congested foot traffic leading to an unusually dangerous hazard in the instant case; and (iii) the claimed hazard in this case — the sidewalk crack — was not located near the only entrance to the facility Jannette was trying to reach. As discussed above, Jannette and VanSteenkiste could have accessed the handicap walkway without encountering the crack by, for example, crossing around two parked cars before entering the walkway, or simply stepping over the crack.

The more closely applicable case to our factual scenario is Royce v. Chatwell Club Apartments, 740 N.W.2d 547, 548 (Mich. Ct. App. 2007), a case in which the plaintiff brought a premises liability action against the lessor of her apartment complex after the plaintiff slipped and fell on black ice in the parking lot. In Royce, the court concluded as follows:

> The fact that the ice patch on which plaintiff fell was located near a handicapped parking space did not give rise to a uniquely high likelihood of harm or severity of harm. The risk of slipping and falling on ice is not sufficiently similar to those special aspects discussed in Lugo to constitute a uniquely high likelihood or severity of harm and remove the condition from the open and obvious danger doctrine.

Id. at 551 (emphasis in original). As in Royce, the condition in this case posed a risk of falling near a handicapped parking space. Under the Royce court's analysis, such a risk is insufficient to rise to the level of a special aspect. Indeed, it is not unreasonable to consider that a sidewalk crack poses a lesser risk of falling than does ice. For these reasons, the Court concludes that the

9

sidewalk crack was not effectively unavoidable and did not present an unusually severe risk of harm. See also Miller v. Esshaki, No. 218170, 2001 WL 770220, at *2 (Mich. Ct. App. Jan. 23, 2001) ("Plaintiff's only asserted bases for finding that the ramp was dangerous was that it was a handicap access ramp leading to a parking lot and that she did not see the depression between the ramp and the parking lot. Plaintiff asserts that, because the ramp leads to a parking lot, an invitee's attention would be distracted by the traffic. This assertion, however, fails to show that the condition was unusual or that the condition presented an unreasonable risk of harm, notwithstanding its open and obvious nature." (emphasis in original)).

### 2. Whether the designation as a handicap area constituted a special aspect of the walkway

In the summary judgment briefing and in a supplemental memorandum, Plaintiff raises an argument that the status of the walkway in question as a designated handicap walkway constitutes a "special aspect" that overrides the open-and-obvious doctrine. For the reasons that follow, the Court rejects Plaintiff's argument that the status of the walkway as a designated handicap area constitutes a special aspect of the walkway.

In support of her argument, Plaintiff contends that the sidewalk crack was a violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., which requires places of public accommodation to meet accessibility standards, including a continuous and unobstructed path of pedestrian travel and designated accessible parking spaces, and a violation of the Michigan Persons with Disabilities Civil Rights Act. Pl. Resp. at 15-18.[5] Plaintiff asserts

---

[5] Although Plaintiff argued in her summary judgment response that the sidewalk crack violated various statutes, the complaint did not include claims of statutory violations at the time of the summary judgment briefing. See Am. Compl. (Dkt. 7). On November 11, 2013, Plaintiff filed a motion to file an amended complaint, adding claims of statutory violations and reopening discovery to investigate the proximate cause of Plaintiff's death (Dkt. 35). Oral argument on the summary judgment motion was conducted on November 14, 2013; on November 18, 2014, the Court entered an Order (Dkt. 37) requiring Plaintiff to submit a "supplemental memorandum of

that the ADA requires reasonable accommodations for disabilities, and that parking lots must have an unobstructed accessible route in the path of travel between parking spaces and building entrances. Pl. Supp. Br. at 1-4 (Dkt. 39). She argues that the requirements of the ADA are "special aspects" that remove the walkway from the general scope of the open and obvious analysis on her premises liability claim. Id. at 4. She also argues that the blue striping on the walkway demarcated an area of an unobstructed handicap route. Id. at 4-5.

Defendant argues that Plaintiff has provided no authority holding that the handicap walkway includes special aspects, or that the ADA alters Michigan common law. Def. Supp. Br. at 1 (Dkt. 41). Defendant argues that the open and obvious doctrine contemplates an average person, not a handicapped person, and that Michigan courts have rejected the proposition that a hazardous location near a handicap area is a special aspect of the area. Id. at 2-3.

The ADA guidelines and regulations relied on by Plaintiff provide that there must be an accessible route connecting designated handicap parking spaces to a building entrance, that the accessible route must be continuous and unobstructed, and that the accessible route must be clearly marked. See Pl. Supp. Br. at 2-5 (citing 28 C.F.R. § 35.151; Americans with Disabilities Act Guidelines Sections 3.4, 3.5, 4.1.2; and the United States Access Board Standards). The parties did not provide any Michigan cases — or any cases from any jurisdiction — analyzing whether statutory duties may affect the standard of care required in a common-law premises liability action. Although the Court is not aware of any Michigan cases analyzing this issue, other jurisdictions have addressed this subject.

---

authority on the legal requirements of a designated handicap walkway, including, but not limited to, accessibility, maintenance, and location." Plaintiff filed a supplemental memorandum (Dkt. 39) and Defendant filed a response (Dkt. 41). The Court presently addresses the argument, raised by Plaintiff in the summary judgment response and in the supplemental memoranda, that the designation of the walkway as a handicap zone alters the analysis applicable to the premises liability claim. In the discussion of the motion to amend, infra, the Court considers Plaintiff's request to amend the complaint to add additional claims of statutory violations.

In <u>Lugo v. St. Nicholas Assoc.</u>, 795 N.Y.S.2d 227, 228 (N.Y.A.D. 2005) (citations omitted), the New York Supreme Court, Appellate Division, concluded as follows:

> Since ADA's purpose is to address issues of discrimination and not safety, the act should not be construed as setting a safety standard for stairs or walkways, even with respect to disabled plaintiffs. In light of the statute's overriding purpose of eliminating discrimination against the disabled, and given that Congress did not include a private right of action [for damages] even for direct and intentional discrimination, there is no discernible reason why . . . any court[] should use ADA as a safety standard to create new and wide-ranging liabilities on building owners. Turning ADA into a safety standard would, in effect, require building owners to refurbish buildings immediately or face potential tort liability to the disabled or persons associated with them for accidents occurring during their attempts to navigate steps into or out of a building, even though the steps may be perfectly proper and without defect.

The Court agrees with this analysis. The ADA addresses discrimination and seeks to ensure accessibility of public accommodations for disabled persons. <u>See</u> 42 U.S.C. § 12182(a) ("No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."). Its purpose is not to establish safety standards for walkways, and Title III of the statute, governing public accommodations and commercial facilities, provides no cause of action for damages in tort or under any other theory. <u>Fischer v. SJB-P.D. Inc.</u>, 214 F.3d 1115, 1120 (9th Cir. 2000). The Court declines to construe the statute as altering the standard of care applicable to common law premises liability actions.

Plaintiff has not pointed to specific standards set forth in the ADA or in the Michigan Persons with Disabilities Civil Rights Act, Mich. Comp. Laws § 37.1302. Rather, Plaintiff has provided general references from ADA regulations and guidelines to the effect that an accessible route must be continuous and unobstructed, but it is unclear from these references whether "continuous and unobstructed" means eliminating significant barriers such as large and gaping

potholes or high curbs with no cut-outs, or whether it also encompasses more minor "obstructions," such as a sidewalk crack.[6]

Further, Michigan courts have made clear that proximity of a claimed hazard to a designated handicap area is insufficient to create, in and of itself, a special aspect of the hazard. See Royce, 740 N.W.2d at 551 ("The fact that the ice patch on which plaintiff fell was located near a handicapped parking space did not give rise to a uniquely high likelihood of harm or severity of harm."). For these reasons, the Court declines to infer from the cited statutory provisions a higher standard of care applicable to Plaintiff's premises liability claim.[7]

The record evidence indicates that the sidewalk crack would be apparent to a reasonably prudent observer upon a casual inspection; that the crack was not effectively unavoidable; and that the crack did not pose an especially severe risk of harm. Those factors, along with the standard of care remaining unaltered by the cited statutory provisions, lead the Court to conclude that the open-and-obvious defense bars Plaintiff's premises liability claim.

**B. Motion to Amend; Supplemental Memoranda**

Plaintiff seeks leave to amend her complaint to add claims of (i) violation of Michigan Compiled Laws § 125.1361, (ii) violation of the Michigan Persons with Disabilities Civil Rights Act, and (iii) violation of the Americans with Disability Act. Plaintiff contends that the amended

---

[6] Although the ADA regulations require a place of public accommodation to "remove architectural barriers in existing facilities . . . where such removal is readily achievable," 28 C.F.R. § 36.304, it is unclear whether "architectural barriers" encompass sidewalk cracks. The examples given in the regulation include "installing ramps" and "making curb cuts in sidewalks and entrances," but there is no reference to sidewalk or walkway cracks. The parties have cited no law interpreting this regulation or any other ADA regulation.

[7] Plaintiff's brief in response to the summary judgment motion references the ADA, the Michigan Persons with Disabilities Civil Rights Act, and Michigan Compiled Laws § 125.1361. However, the only provisions quoted by Plaintiff in support of her argument are ADA regulations and guidelines. See Pl. Resp. at 15-18; Pl. Supp. Br. at 1-5. Regardless, the Court concludes, for the reasons stated above, that the cited statutes do not alter the standard of care on the premises liability claim.

counts of statutory violations would make the open and obvious defense inapplicable, and that Defendant would not be unduly prejudiced by allowing Plaintiff to submit an amended complaint. Pl. Mot. at 10 -11. The proposed amended complaint, which is attached as Exhibit A to Plaintiff's motion (Dkt. 35-1), contains the same factual allegations as the original complaint and contains counts of premises liability and vicarious liability, as well as counts asserting claimed violations of the above statutes. Defendant argues that the motion should be denied on grounds of futility and delay. Def. Resp. at 1-2 (Dkt. 40). For the reasons set forth below, the Court concludes that each of the proposed amended counts would be legally insufficient, thereby requiring the Court to deny the motion to amend as futile.

A motion for leave to amend may be denied if amendment would be futile, i.e., if the amendment would not correct the infirmities in the original complaint. Keweenaw Bay Indian Cmty. v. State, 11 F.3d 1341, 1348 (6th Cir. 1993). The Sixth Circuit has explained the standard for determining whether a proposed amendment is futile:

> A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." Riverview Health Inst. LLC v. Med. Mut. of Ohio, 601 F.3d 505, 512 (6th Cir. 2010) (internal citation and quotation marks omitted). To survive a motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level and to state a claim to relief that is plausible on its face." Keys v. Humana, Inc., 684 F.3d 605, 608 (6th Cir. 2012) (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)) (internal quotation marks omitted). "A plaintiff must 'plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (alteration in original) (quoting Iqbal, 556 U.S. at 678).

Maxwell v. Corr. Med. Servs., Inc., 538 F. App'x 682, 691 (6th Cir. 2013).

As an initial matter, Plaintiff is correct that the open-and-obvious doctrine is not a defense to violation of statutory duties. The Michigan Court of Appeals has explained:

> It is true that "the applicability of the open and obvious danger doctrine depends on the theory underlying the negligence action." The open and obvious danger

14

> doctrine cannot be used to avoid a specific statutory duty. Therefore, if a negligence action is premised on the violation of a statute rather than on common-law principles of premises liability, the open and obvious danger doctrine will not apply.

Kennedy v. Great Atlantic & Pacific Tea Co., 737 N.W.2d 179, 186 (Mich. Ct. App. 2007) (citations omitted).[8] The Court, therefore, turns to each of the proposed amended claims of statutory violations.[9]

Plaintiff seeks to add a count alleging violation of Michigan Compiled Laws § 125.1361. Section 125.1361, governing construction requirements of sidewalks, provides:

> A sidewalk constructed or reconstructed after April 12, 1973 on public or private property for public use within this state, whether constructed by a public agency

---

[8] The motion to amend and proposed amended complaint are not entirely clear as to whether Plaintiff seeks to add claims alleging violations of the cited statutes, or whether she seeks to raise a negligence per se theory applying any standards set forth in the statutes. "In Michigan, violation of a statute is negligence per se if the statute was intended to protect a class of persons, including the plaintiff, from the type of harm which resulted from its violation. This is so, even though the statute does not, as is normally the case, contain a provision respecting civil liability." Thaut v. Finley, 213 N.W.2d 820, 821-822 (Mich. Ct. App. 1973) (citations omitted). However, as explained further above, regardless of whether Plaintiff seeks to add claims of statutory violations or claims of negligence per se, such claims would be futile.

[9] At oral argument, Plaintiff raised, for the first time, an argument that under the Michigan Civil Jury Instructions, allegations of statutory violations give rise to an inference that Defendant was negligent. Plaintiff's argument appears to rely on Michigan Civil Jury Instruction 12.01, which provides that a jury may be instructed that if it is found that a party violated a statute, the negligence of the party may be inferred, if "the statute is intended to protect against the result of the violation; the plaintiff is within the class intended to be protected by the statute; and the evidence will support a finding that the violation was a proximate contributing cause of the occurrence." As an initial matter, an argument raised for the first time at a hearing or oral argument is not properly before the Court. See Van Sickle v. Automatic Data Processing, Inc., 952 F. Supp. 1213, 1221 (E.D. Mich. 1997) (summary judgment inappropriate on an issue raised for the first time at a hearing, because the opposing party did not have an opportunity to respond); White v. FedEx Corp., No. 04-00099, 2006 WL 618591, at *2 (N.D. Cal. Mar. 13, 2006) ("The Court will not consider any arguments or evidence raised for the first time at the hearing."). Nor has Plaintiff cited any cases explaining why the Michigan Jury Instructions should be authoritative precedent for this Court. The Court explains, above, that (i) the standard of care applicable to the premises liability claim is unaltered by the cited statutes and (ii) the proposed claims of statutory violations would be futile. Therefore, the Court rejects Plaintiff's argument that the Michigan Jury Instructions have any bearing on this analysis.

> or a person, firm, corporation, nonprofit corporation, or organization, shall be constructed in a manner that will facilitate use by persons with physical disabilities. At points of intersection between pedestrian and motorized lines of travel, and at other points when necessary to avoid abrupt changes in grade, a sidewalk shall slope gradually to street level so as to provide an uninterrupted line of travel. The state transportation department shall prescribe standards of slope gradient, width, and slip-resistant qualities that will assure that a sidewalk accommodates a person in a wheelchair or other persons with physical disabilities. All agencies of state and local government including school districts and other groups aforementioned, public or private, shall comply with these standards and this act when undertaking construction or reconstruction of affected streets, curbs, or sidewalks, except that a local unit of government may adopt ordinances that provide for standards at least equal to those provided by the state transportation department.

Defendant argues that nothing in this provision creates a private cause of action. Def. Resp. at 3-4. The Court agrees. Plaintiff has provided no law holding that a private party may bring a cause of action under section 125.1361.[10]

Further, this section seems to be inapplicable to Plaintiff's case; the provision applies to "points of intersection between pedestrian and motorized lines of travel" and requires that the sidewalk "slope gradually to street level." In other words, where a pedestrian pathway meets a street, the sidewalk must include a cut-out so that the sidewalk and street are accessible to persons with disabilities. See Moraccini v. City of Sterling Heights, 822 N.W.2d 799, 801 (Mich. Ct. App. 2012) ("The sidewalk was constructed by the city in 1977, and the contractor who built the sidewalk chipped or cut out the raised portion of the existing curb to bring the road flush with the sidewalk as required by Mich. Comp. Laws § 125.1361."). However, the instant case does not involve a curb-sidewalk juncture that was allegedly noncompliant with this provision. Instead, this case involves a walkway crack; however, Plaintiff has not demonstrated that § 125.1361 is applicable to sidewalk cracks or that it was intended to protect from the type of harm Plaintiff incurred. The Court concludes that the claimed violation of this provision

---

[10] Nor did Plaintiff provide any federal or state cases in which a party brought suit to enforce § 125.1361, and the Court is not aware of any.

would fail to state a claim, and amending the complaint to add this count would be futile.

Next, Plaintiff seeks to amend her complaint to add a count of violation of the Michigan Persons with Disabilities Civil Rights Act, Mich. Comp. Laws § 37.1302. This section provides,

> Except where permitted by law, a person shall not . . . [d]eny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation or public service because of a disability that is unrelated to the individual's ability to utilize and benefit from the goods, services, facilities, privileges, advantages, or accommodations or because of the use by an individual of adaptive devices or aids.

Defendant argues that the claimed violation of the Michigan Persons with Disabilities Civil Rights Act is futile because the presence of the sidewalk crack does not constitute discrimination or denial of the use of the walkway. Def. Resp. at 4.

As an initial matter, it is undisputed that the Michigan Persons with Disabilities Civil Rights Act provides for a private cause of action to enforce the provisions of the Act. See Mich. Comp. Laws § 37.1606 ("A person alleging a violation of this act may bring a civil action for appropriate injunctive relief or damages, or both."). "Once a plaintiff has demonstrated that he is able to benefit from services provided by a place of public accommodation and that he is being denied an 'equal opportunity' to do so because of a 'physical or mental characteristic,' the facility has a duty to accommodate the person [under the Michigan Persons with Disabilities Civil Rights Act]." Cebreco v. Music Hall Ctr. for the Performing Arts, Inc., 555 N.W.2d 862, 865 (Mich. Ct. App. 1996) (footnote and citations omitted).

The Court concludes that Plaintiff has not shown that Jannette was denied an equal opportunity to benefit from services provided by the parking lot due to the sidewalk crack. First, as Defendant points out, the sidewalk crack was avoidable by selecting a different parking space or access area; for this reason, the crack would not pose an accessibility barrier for the majority

of handicapped persons using the parking lot. Second, Plaintiff has not shown that she was being denied an equal opportunity to enjoy the services of the parking lot due to a mental or physical characteristic. The record evidence demonstrates that the crack was not of such dimensions that no person with a walker would be able to cross it; as noted above, a walker could be lifted over the crack. Finally, any risk of tripping posed by the crack would be applicable to both handicapped and non-handicapped people; for example, it is plausible that a high-heeled shoe could as easily become lodged in the crack as could a walker wheel. For these reasons, Plaintiff has not shown that the sidewalk crack denied Jannette an equal opportunity to enjoy the services of the parking lot based on her physical disability, or that the Michigan Persons with Disabilities Civil Rights Act was intended to protect from the type of harm Plaintiff incurred.[11]

Finally, Plaintiff's proposed count of violation of the ADA is futile. The applicable section of the ADA to Plaintiff's claim is Title III, which governs public accommodations and commercial facilities. The ADA provides, in part, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). It is established that "[m]onetary relief is not an option for private individuals under Title III of the ADA. As a result, a plaintiff who files an ADA claim can at most hope to improve access through an injunction." Fischer, 214 F.3d at 1120 (citation omitted). However, Plaintiff's complaint does not seek an injunction; it seeks only damages. Moreover, as explained above, Plaintiff has not shown how the sidewalk crack denied her the full and equal enjoyment of the parking lot based on her disability; nor has she shown that any safety standards set forth in

---

[11] Plaintiff does not cite any regulations regarding any safety standards promulgated under the Michigan Persons with Disabilities Civil Rights Act; nor does she argue that any such standards would govern sidewalk cracks or may be otherwise applicable here.

18

the ADA regulations govern sidewalk cracks.  Thus, Plaintiff has not demonstrated that the ADA would be applicable to this case.  Therefore, the count of violation of the ADA would fail to state a claim, and adding this proposed amendment would be futile.  See also Southwell v. Summit View of Farragut, LLC, 494 F. App'x 508, 512 n.3 (6th Cir. 2012) ("We have previously held that a plaintiff may not bootstrap an ADA claim against a private entity into a claim for monetary damages via a negligence per se theory.").

For the reasons stated above, the Court concludes that Plaintiff's proposed amended claims would be futile, and the Court denies the motion to amend.[12]

## V. CONCLUSION

For the reasons stated above, the Court grants the motion for summary judgment (Dkt. 27) and denies the motion to amend (Dkt. 35).[13]  The Court also denies as moot the request to reopen discovery.

SO ORDERED.

Dated:  June 17, 2014  
Flint, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 17, 2014.

s/Deborah J. Goltz  
DEBORAH J. GOLTZ  
Case Manager

---

[12] Because the Court denies the motion to amend on futility grounds, the Court need not consider whether, as Defendant maintains, amendment would also be barred on grounds of delay.

[13] As explained above, the Court concludes that Defendant is entitled to summary judgment on the premises liability count.  Because the other count in the complaint — vicarious liability — is based entirely on the premises liability claim, Defendant is entitled to summary judgment on that count as well.